## IN THE MATTER OF THE APPLICATION OF WONG BUCK KAM, CHING WAI FUI AND CHANG FATT FOR A WRIT OF MANDAMUS AGAINST LEE CHEE AND LUM MOO.

### No. 1781.

ARGUED OCTOBER 17, 1928.               DECIDED OCTOBER 27, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a proceeding for a writ of mandamus. The petitioners are members of a Chinese society and the respondents claimed to be treasurer and bookkeeper respectively of the same society. After trial the circuit judge issued a peremptory writ, the mandate of which was that the respondents should "permit all the petitioners * * * or any of them to inspect and examine the books of account and records and documents of said corporation pertaining to the office of treasurer and bookkeeper respectively", and "provide" the petitioners "or any of them

free access to said books of account and records" and "have said books and records present and to permit said inspection and examination" in a designated room in the judiciary building in Honolulu on certain days mentioned. The case having come to this court on a writ of error and the judgment having been affirmed, a new date was upon motion fixed by the court for compliance with the terms of the peremptory writ. At the time and place named in the order the respondents produced certain books and papers. These were examined by the petitioners and were declared by them not to be the books and papers which they desired to examine and inspect. Subsequently, on July 11, 1927, the petitioners filed a motion that the court do "issue a warrant of arrest against the above named Lee Chee" (one of the respondents) "to answer for contempt in neglecting and refusing to comply with the terms of" the peremptory writ and "that the said respondent Lee Chee be punished, according to law, and that they" (the petitioners) "have such other and further relief as to this court shall seem proper". In answer to this motion Lee Chee filed his own affidavit and affidavits by four other persons closely associated with him in business and residence, tending to show that Lee Chee has no other books or papers of the Chinese society in his possession and that he and the other affiants have made careful and thorough search and have been unable to find any other books or papers and also the affidavits of two other persons tending to show that in July, 1924, several boxes containing old papers and old books were destroyed and that some of the papers and books so destroyed probably belonged to Lee Chee and that as to one of these affiants he did not inform Lee Chee of the burning of the boxes and contents until within three months next preceding the date of the filing of the affidavit.

When the motion for the issuance of a warrant came

on for hearing counsel for Lee Chee called the court's attention to the affidavits filed and offered to produce the affiants "as witnesses in this proceeding, to show what this man has done and what he has caused the people who are associated with him and connected with him to do for the purpose of satisfying the mandate". The circuit judge refused to consider the affidavits which had been filed and to permit the witnesses to be called. In the argument preceding the ruling counsel for the petitioners contended that the affidavits were "merely an effort to introduce evidence which should have been introduced at the hearing on the alternative writ" and said, "I understand the court to make the same ruling?" The court answered, "yes". The court also said: "If this question should be reexamined properly at this time in this proceeding or this type of proceeding, then the petitioners for writ of mandamus, the allegations of whose petition have been sustained after a lengthy hearing, have placed upon them the obligation of beginning all over, because if the question is opened at all and witnesses are called, then it must be gone into with the utmost thoroughness, and they would be obligated to establish a second time substantially the same thing, if not identically the same thing, that they were required to establish before Judge Andrade" (the circuit judge who presided at the main trial and issued the peremptory writ) "and it occurs to me that that is neither in line with orderly procedure nor is it according to a judge of coordinate jurisdiction the respect to which his decisions are entitled". The motion for arrest of Lee Chee was then granted. Thereafter counsel for Lee Chee said: "And your Honor in doing that also refuses my offer of evidence, any evidence, refuses to look into the affidavits or"— The court: "I think that is involved here in the decision." Counsel: "It is involved in the decision, so that there won't be any

question about it, that I have offered evidence and these affidavits in support of resisting this warrant of arrest, which are disallowed." The court: "That is all in. The execution of this warrant of arrest will be stayed pending the perfection of the appeal." It seems to us that there can be no doubt that the words and the action of the trial judge constituted a refusal to permit the respondent to show inability on his part to comply with the mandate of the peremptory writ any further than he had already complied with it.

The law is clear that in proceedings for mandamus a respondent's inability to perform is, like impossibility of performance and lack of power to perform, a defense to a motion seeking to have him coerced into performing, or to punish him for not performing. If the inability to perform has been caused by the respondent's own act or omission which was intended to accomplish a contumelious disregard of the order of the court, it will not operate as an excuse or defense against punishment by fine or by imprisonment for a stated term as for a completed contempt; but even such a contumelious failure to obey will not justify an order to perform that which obviously cannot be done or a committal to jail, there to remain until the impossible act has been performed. Courts will not stultify themselves by any such procedure. They would properly incur the disrespect of the community which they serve if they should attempt it. Our statute relating to mandamus (Sec. 2692, R. L. 1925) provides that to a peremptory writ "no other return shall be admitted but a certificate of perfect obedience and due execution of the writ" and that "if the party does not obey, an order of arrest may issue, upon due proof of the service of the writ, under which the party shall be imprisoned until he has rendered obedience to the mandate". This provision must be given a reasonable and not a too

literal construction. The "perfect obedience" required must be deemed to be a perfect obedience which is humanly possible and not one which has become impossible. A respondent who has become insane or paralyzed certainly would not be required to yield perfect obedience. One within whose power it does not lie to do the acts commanded could not be expected to obey; and so also one who is at the time unable to perform cannot be coerced by imprisonment into performing, although, as above stated, he may be punished by fine or by a stated term of imprisonment (within the jurisdictional limits of the power of the court to so punish), if the inability was brought about intentionally by his own act or omission.

"Where contempt proceedings are instituted" (in mandamus) "against a respondent to enforce his obedience to the writ, he may justify his failure to obey by showing his inability to perform, or that it is impossible to perform, or that he has not the power to obey." 19 A. & E. Ency. L. 901.

"Inability to perform, if respondent himself is not at fault and his own conduct has not caused the inability, is a sufficient excuse." 38 C. J. 937.

"It seems hardly in consonance with reason or law to punish a man for not doing that which he has not the ability to do, or to punish him, without a hearing, for not doing that which he declares he is powerless to do." *Nixon* v. *Nixon*, 37 Pac. (Mont.) 839, 840, an alimony case.

"If, because of the want of means, they cannot comply with the writ, and if, after due diligence, they remain unable to procure the necessary means for this purpose, and make these things appear to the court in any proceeding for contempt which may be instituted against them, we apprehend the presiding judge would take great care to see that no injustice or hardship was imposed upon them and certainly would not inflict punishment for a

failure to do a thing impossible of accomplishment." *Savannah Canal Co.* v. *Shuman,* 91 Ga. 400, 403.

"The respondent is at liberty to show any excuse he may have for disobedience to the writ on the hearing for a motion to show cause why an attachment should not issue. If the excuse is sufficient in the eyes of the court, the writ of attachment will not issue. 'The law never seeks to command the impossible, and it has always been held by the courts of this country, as well as by those of England, that "impossibility of obedience" is a good and sufficient return to a writ of mandamus.'" *United States* v. *Seaboard Ry.,* 85 Fed. 955, 956.

"It is the duty of defendants to obey the order", (mandamus) "if they can, but if, acting in good faith, they cannot, they will have full opportunity to make such answer in case a rule for contempt is issued returnable in the cause." *Cabarrus Dist.* v. *Commissioners,* 94 S. E. (N. C.) 530, 531.

It is urged by the petitioners that the evidence now offered by Lee Chee to the effect that the box or boxes containing old books and papers destroyed in July, 1924, should have been adduced at the main trial prior to the issuance of the peremptory writ and attention is called to the fact that testimony to the same effect was given by Lee Chee at that trial and was disbelieved by the judge then presiding. The contention is that the decision of Judge Andrade and the peremptory writ issued thereon are *res judicata* on this subject and that it is not now open to the respondent Lee Chee to claim that any books or papers were destroyed in July, 1924. As to this contention it is to be observed that while Judge Andrade in his opinion at the close of the trial did indicate his disbelief of the testimony referred to, the peremptory writ did not designate specifically the books and papers which the respondents were commanded to produce and permit

an inspection of. The description is merely "the books of account and records and documents of said corporation pertaining to the office of treasurer and bookkeeper respectively". This description would seem to leave room for uncertainty and for argument as to precisely what books and documents were meant. However that may be, it does not necessarily follow that because Lee Chee had certain books and records in his possession at the date of the peremptory writ, to-wit, January 21, 1925, he still had them in his possession or that they were still in existence at the date of the motion for the warrant, to-wit, on July 11, 1927. A period of two and one-half years elapsed between these two dates and it was entirely possible for the books and papers to have been destroyed or lost during that period.

The warrant issued in this instance commanded the sheriff "to forthwith arrest and imprison the said Lee Chee until the further orders of this court". No limit of time for the imprisonment was set. It was not an imprisonment for a stated time by way of punishment for a past contempt. It was evidently intended to be a coercive imprisonment to compel the production of the books and papers.

It was error to have refused to consider the affidavits filed and to admit the testimony of the affiants and to have committed the respondent Lee Chee to jail for an indefinite term without giving him an opportunity to show his inability to perform the mandate any further than he had already performed it.

The warrant of arrest is set aside and the cause is remanded to the circuit judge for further proceedings not inconsistent with this opinion.

*A. G. Smith* (*Smith, Wild & Hoppe* on the brief) for petitioners.

*Fred Patterson* (also on the briefs) for respondents.